## McMAHON *a.* TENTH WARD SCHOOL-OFFICERS OF NEW YORK.

*New York Common Pleas; General Term, March,* 1861.

### MECHANIC'S LIEN.—PARTIES DEFENDANT.

In a proceeding to enforce a mechanic's lien, the person for whom the building was erected, and who contracted to pay for it, is "the owner," within the statute.

Hence, in a lien for work on a public-school building in the city of New York, the ward school-officers, who select the site, and contract for the building; the Board of Education, under whose direction the school-officers act in so doing, and who pay for the building; and the mayor, aldermen, and commonalty of the city, who have the use of the building, and the right of its disposal after its use as a school ceases,—are all proper parties, to be joined as "the owner" of the building, within the meaning of the statute.

The provision of the Laws of 1851, 747, § 25, as amended by the Laws of 1853, 635,—requiring all suits in relation to school-property to be brought in the name of the Board of Education,—does not apply to such a case.

Appeal from a judgment entered on the report of a referee.

The facts are stated in the opinion.

By the Court.—DALY, F. J.—This was an action brought to enforce a lien which the plaintiff claimed to have for work, labor, and materials, furnished towards the erection of a public schoolhouse in the tenth ward of this city. The work, which consisted of painting, was done by the plaintiff in pursuance of a contract entered into by the school-officers of the tenth

ward with the defendant Collins, who contracted to erect the building, which contract was approved by the Board of Education. After the work was finished, the plaintiff caused a notice of lien to be filed with the county clerk, in which notice the Board of School-Officers of the tenth ward, the Board of Education, and the mayor, aldermen, and commonalty of the city of New York, were stated to be the owners of the building.

The referee dismissed the complaint upon the ground that the mayor, aldermen, and commonalty of the city of New York were the owners, and that the work was not done in pursuance of a contract made with them, inasmuch as the contract was made with the school-officers of the tenth ward, and the Board of Education.

The authority to erect a building of this nature, the use and control of it when erected, and the title to it, are regulated by law. The necessity of establishing a school in a ward must be certified in writing, in the first instance, by a majority of the school-officers of the ward.. The expediency of establishing it must then be determined by the Board of Education, and if they authorize it, the school-officers are empowered to procure a site and erect a building thereon, according to plans, specifications, and contracts, which must be approved by the Board of Education; and before entering into any contract, the ward-officers must advertise for proposals for two weeks before deciding upon the estimates submitted to them. (*Laws of* 1851, 747, §§ 23, 24.) The Board of Education are required to report to the supervisors the amount of school-money which will be necessary to meet the current annual expenses of public instruction, among which are enumerated what may be necessary for erecting buildings, purchasing sites, &c., and the supervisors are required to raise it and pay it into the city treasury. The Board of Education must apportion it, and it is paid by the chamberlain, upon the drafts of the proper officers of the board, and then appropriated by the board to the purposes for which it was raised. (*Laws of* 1851, 744, §§ 3, 16, as amended by *Laws of* 1854, 240, § 3, subd. 1.) In addition to which the Common Council are directed to raise by loan, in anticipation of taxes, when necessary, all moneys required for erecting schoolhouses, &c. (*Laws of* 1851, 749, § 28.) The title to all school-property, whether real or personal, is vested in the

mayor, aldermen, and commonalty of the city of New York; but, as long as it is used for the purpose of public education, the care and control of it is vested in the Board of Education, who are empowered to take and hold real and personal property. They constitute a corporation, for all the purposes of the public-school act, and all suits in relation to school-property under their care and control, whether real or personal, must be brought in their name. (*Laws of* 1851, 747, § 25, as amended by *Laws of* 1853, 635, § 14, § 2, subd. 1, § 11.)

It was held by the Court of Appeals, in Loonie *a.* Hogan (5 *Seld.,* 440), that it is immaterial in whom is the title to the land upon which the building stands. That the object of the statute was to allow a party, meritoriously entitled to be paid for work done upon it, to intervene between the owner for whom the house was built, and the person who had contracted to build it, and to direct the course of the payments which would have passed into the hands of the contractor, to his own. That it was a form of equitable subrogation, regulated by statute. It does not follow, therefore, that because the title to the school-house is vested by law in the mayor, aldermen, and commonalty of the city of New York, that they alone must be deemed, for the purposes of the lien law, the owners. The Board of Education and the ward-officers have conferred upon them, by law, rights and powers incident to ownership. The three bodies have, distributed between them, all the rights and powers which an owner can possess, and may, within the meaning of the lien law, be regarded, collectively, as the owners. According to the construction of the Court of Appeals, in which the whole court concurred in affirming the judgment of this court rendered upon the same construction, the owner is the one for whom the building is erected, and who contracted to pay for it. In this case, the building may be said to be erected for the three bodies. The ward-officers, in the first place, procure it to be erected. But for their action the Board of Education could not act; and but for the acts of both it would not exist. The ward-officers organize the school, select the site for the schoolhouse, and contract for its erection with the approbation of the Board of Education, and have intrusted to them the safe-keeping of it (*Laws of* 1851, 740, § 10, subd. 1), and the power of making all needful repairs, alterations, and additions (*Laws of* 1854, 241,

subd. 2 of § 10), and under the general rules and regulations of the Board of Education, the care and management of the school (subd. 2 of § 10), as long as the building is used for educational purposes.   The Board of Education pay for the erecting of it out of moneys belonging to the school-fund, of which they have the sole direction, and the mayor, aldermen, and commonalty get the use of the building and the right to dispose of it as a part of the general property of the city, when a majority of the school-officers and a majority of the Board of Education determine that the building shall be no longer used as a schoolhouse (*Laws of* 1851, 748, § 27).   I think the plaintiff was right, therefore, in designating the three bodies in his notice of lien, as conjointly the owners, and that it was a compliance with that provision of the statute which requires him to state in his notice " the name of the owner of the building." (*Lien Law of* 1851, ch. 513, § 6.)

The lien law may and should be applied in such a case. There is no reason why the plaintiff should not be subrogated to the first contractor, where the parties for whom the building was erected have obtained the benefit of the work and labor which the plaintiff bestowed upon this building in the course of its erection, and where one of them have still in their hands moneys to which the first contractor would be otherwise entitled. The equitable design of the statute is as applicable in this case as in any other.   Its provisions may be, and in this case have been, substantially complied with ; and, as respects the enforcement of the lien against the building, the effect of it, where all who are interested are made parties to the proceeding, is not different from other cases.

Section 25 of the act (*Laws of* 1851, 747, as amended, *Laws of* 1853, 635) declares that all suits in relation to school-property, real or personal, shall be brought in the name of the Board of Education.   This clause, when interpreted in connection with numerous other provisions in this extensive and very complicated statute, is not to be understood as requiring an action of this nature to be brought against the Board of Education alone, and I doubt if it has any application to the party defendant.   I am disposed to think that it means that suits brought in respect to such property shall be brought by the Board of Education only.   But, however that may be, it is very

plain that an action of this description, or in fact any action arising upon contract, made in pursuance of any of the provisions of this act, in which the remedy is a judgment, to be enforced against real or personal property, cannot be effectual unless the party whose property is sought to be reached is made a party defendant. In this case the title to the building, and the reversionary right to its use, is in the mayor, aldermen, and commonalty, and their proprietary right in the building could not be affected unless they are made parties to the proceeding. The ward-officers and the Board of Education made the contract out of which the cause of action arose, and their rights in the use of the building for educational purposes would be directly affected by the judgment which is sought to be obtained. It is an equitable action in which all these parties have an interest, as they may all be affected by the result, and they were, therefore, properly joined as parties defendant.

The judgment entered upon the report of the referee should be reversed.