MICHAEL HALLAHAN *v.* DANIEL HERBERT AND OTHERS.

The owner of certain lots in the city of New York agreed to sell them and make advances to the purchasers to enable them to build, and upon the completion of the buildings, to deliver a deed. The purchasers contracted with plaintiff's assignor to furnish certain materials for the building, and on account of the materials thus furnished a mechanic's lien was filed against the owner of the lots. *Held*, it could not be enforced.

The act of 1863 (Laws of 1863, ch. 500), in regard to mechanics' liens in New York city, which provides for a discharge of the lien effected under that act by an entry on the judgment docket, by order of the court, that the judgment rendered in a proceeding to enforce the lien has been "secured on appeal," does not interfere with liens acquired under the provisions of previous acts (acts of 1851 and of 1855), or authorize their discharge upon the terms or in the manner provided as to those acquired under the act of 1863.

Nor is there any provision of the Code of Procedure by which such a judgment can be marked "secured on appeal," with any such effect as to discharge the lien or security upon the property. The most that the granting of an order to that effect could do would be to stay the enforcement of the personal judgment.

In a proceeding to enforce a mechanic's lien, a defense that the lien has been released or removed must be pleaded, or it cannot be proved.

A person entitled to file a lien may assign his claim and afterwards file a lien or do any similar act in aid of the claim, or if he neglects to do so, his assignee may do it in his name.

Even if this were not allowable, the objection cannot be raised by the introduction of evidence in a proceeding to enforce the lien, commenced by the original claimant and lienor, in which the answer does not take issue on that point, and in which the assignee of the claim is substituted as plaintiff by an order of the court.

Where the owner appears and deniesthe debt, under § 8 of the act of 1851, a personal judgment may be rendered against the owner and contracting party, which may be enforced by execution, as in other actions.

APPEAL by defendants from a judgment of this court in a proceeding to foreclose a mechanic's lien.

The proceeding was commenced January 7th, 1864, by service of notice on the defendants to appear and submit to an accounting.

Defendants demurred to the complaint, but their demurrer

was overruled at special term, and they appealed to the court at general term. After taking the appeal, they procured an order that on their giving a bond with sureties, &c., " an entry be made by the county clerk on the docket of mechanics' liens, and on the docket of such judgment and decree, *secured on appeal*," and in obedience to such order, such entry was duly made by the clerk.

The demurrer was sustained by the general term, and upon the plaintiff amending his complaint, and an answer being put in by the defendants, the issues were referred to a referee, who reported in favor of plaintiff; that the equitable interest of Daniel Herbert, Elias Herbert and William S. Ford in the property covered by the lien should be sold, and also for a personal judgment against the said defendants.

*William Weston*, for appellants.

*William McDermott*, for respondent.

By the Court.*—Robinson, J.—The facts of this case are substantially as follows: The defendants, Daniel and Elias Herbert, and William S. Ford, composing the firm of D. and E. Herbert & Co., in 1860, made a verbal contract with the defendant Cudlipp, to purchase from him twenty-eight lots on the northerly side of 69th street, in the city of New York, commencing at 10th avenue, and extending about 650 feet westerly, and to erect sixteen houses thereon, Cudlipp agreeing to advance money towards the erection of the houses, and when they were built, the purchasers were to take deeds and give back mortgages for the price of the land and the advances. They proceeded with the work, and on the 23d of December, 1861, the houses being all inclosed, Cudlipp and Graff and their wives conveyed the lots to Daniel Herbert, who, at the same time, executed to his grantors two mortgages on the property, one for $10,000 and one for $31,900. Subsequently, Daniel Herbert and wife, by deed dated the 12th of February, 1862, con-

---

* Present, Daly, Ch. J., and Robinson, J.

veyed to Cudlipp the same twenty-eight lots, subject to all incumbrances.

Cudlipp, together with his wife, subsequently, by deed dated March 7th, 1863, reconveyed to Herbert twenty-four of the same lots, who at the same time executed to Cudlipp a mortgage thereon for $23,500. It was agreed on the trial that *these several deeds and mortgages were executed in pursuance of the original verbal agreement between* Cudlipp and Herbert & Co. The reconveyance to Cudlipp, dated February 12th, 1862, was upon a consideration then received from him. In May, 1862, D. and E. Herbert & Co. contracted with Jacob Demarest for the furnishing of the blue stone for the sixteen houses under written contract, by which it was provided that if he delayed in fulfilling his contract, Herbert & Co. might proceed with the same, and charge the expense to him. In August, 1862, he became insolvent, and left the work incomplete, and plaintiff, his assignee, and Herbert & Co. supplied what was required, and on an accounting and settlement, which shortly afterwards took place between them (the only parties then interested), $960 67 was found due for the work performed under this contract.

In November, 1862, Demarest filed a mechanic's lien on these sixteen buildings for this work, claiming $795 to be still due him, in which Cudlipp was alleged to be *owner*. On the 23d of January, 1863, he filed another notice of lien in the county clerk's office, claiming $990 to be due him on this contract with Herbert & Co. and that they were the *equitable owners* under a written contract of sale made by them with Cudlipp, the *legal owner*. This latter is the lien attempted to be foreclosed in this action. The evidence shows the claim of Demarest as attempted to be asserted under these several liens, had been assigned to the plaintiff, and there was proof of some such transfer before November, 1862, but the formal assignment was dated January 23d, 1863. The first lien was radically defective in attempting to assert rights against the title of Cudlipp, as owner, under an alleged contract with Herbert & Co. as " contracting builders " (*Beals* v. *Congregation B'nai Jeshurun*, 1 E. D. Smith, 654).

Cudlipp, the owner of the legal title, having agreed to sell the lots, and also to make the loan to enable the purchasers to build, the buildings were not erected for him, but for the purchasers, who were the equitable owners, and were engaged in erecting the buildings on their own account. They contracted with Demarest on their own behalf, and it was only against their interest in the premises that the lien could be asserted (*Loonie* v. *Hogan*, 9 N. Y. 435; *Walker* v. *Paine*, 2 E. D. Smith, 662; *McMahon* v. *Tenth Ward School Officers*, 12 Abb. Pr. 129). The mortgage of Herbert to Cudlipp for $23,500, above referred to, was foreclosed in an action in which Daniel Herbert (the mortgagee) and wife and William S. Ford were defendants, and by a judgment therein, dated January 19th, 1864, the premises were sold, February 12th, 1864, to Robert J. Brown, but neither the plaintiff nor Demarest were made parties to the proceedings, nor was the lien that had been created by the notice, filed January 23d, 1863, upon the interest which Daniel Herbert had in the land on which the buildings were erected, whether legal or equitable, affected thereby. Although the interest of D. & E. Herbert and Ford in the land was merely equitable and subject to such proceedings at law as operated to extinguish it, yet being one patent and matter of record, so long as it subsisted, the creditor holding the lien was entitled to notice of and to be made a party to any proceeding instituted for its foreclosure or extinguishment.

By statute his lien continued "until the expiration of one year from the creation thereof and *until judgment rendered in any proceeding for the enforcement thereof*" (Laws of 1851, ch. 513, § 12).

These proceedings for the foreclosure of the lien as against the owner and subsequent parties in interest were commenced within the year, to wit, January 14th, 1864, and have ever since been pending.

Neither the act of 1851 nor the amendatory act of 1855 (Laws of 1855, ch. 404, p. 760) afford any way of relieving or discharging the lien created by the filing of the notice as provided for by the former act, except in the manner provided by § 11 of the act of 1851 (ch. 513): 1st. By satisfaction; 2d.

A deposit of the amount claimed with the clerk; 3d. An entry by the clerk, after the lapse of one year, that no notice had been given him to enforce the lien; 4th. Proof of default of claimant on notice by owners to commence action for the enforcement of the lien; and, 5th. By its satisfaction after action brought for its enforcement.

The act of 1863 (ch. 500), which took effect July 1st, 1863, (§ 15), repealed (§ 12) the acts above referred to, except so far as might be necessary to carry into effect liens acquired before that act took effect, and to allow persons thereafter performing work or furnishing work prior to July 1st, 1863, to acquire a lien pursuant to the provisions of that act.

This lien had been acquired under the act of 1851 and its amendment of 1855, under which both the right and the remedy had then been perfected, so far as could be afforded by those acts.

It was within the province of the Legislature to alter the remedy for the enforcement of the right, but not to affect its validity or efficacy as created by existing laws by authorizing any substituted security (*Bronson* v. *Kinzie*, 1 How. U. S. 311; *Howard* v. *Bugbee*, 24 Id. 461).

The provision in the subsequent act of 1863 authorized a discharge of the lien effected under that act by an entry (on the judgment docket) by order of the court, that the judgment [on a proceeding to enforce it] had been "secured on appeal," but it did not, in terms or in effect, otherwise interfere with liens acquired under previous statutes, or authorize their discharge upon the terms or in the manner provided as to those that might subsequently be acquired under that act. This action being one *in rem*, the Code did not provide for any release of the primary lien of the debt, upon a judgment for its enforcement, or authorize the marking of a judgment directing a sale of the property as "secured on appeal," with any such effect as to *discharge the lien or security upon the property.* The granting of an order to that effect could, at most, operate as a stay of the personal judgment (*Rathbone* v. *Morris*, 9 Abb. Pr. 213; Code, § 339). The answer does not, by *way* of defense, allege any release or removal of the lien through that

proceeding, nor can any be claimed (when not alleged) through the desultory proof that an order was granted, directing the docket to be marked " secured on appeal."

Notwithstanding the order in this cause, made August 30th, 1864, substituting the plaintiff Hallahan, as assignee of the claim in suit, instead of Demarest, the person performing the work, it is claimed that as Demarest had, prior to the filing of this lien, assigned the claim to plaintiff, the defendants are entitled to maintain the invalidity of the lien, because the debt upon which it was predicated, having been assigned by the party, did not belong to him, and no such right of lien belonged to him.

No such fact was presented or objection taken for the consideration of the court when it decided that the plaintiff, as assignee, ought properly to be substituted in this action as plaintiff, instead of Demarest, the original creditor. Upon such interlocutory decision, the matter presented for adjudication, under § 121 of the Code, was definite and certain, and was to be determined upon the evidence then presented, and if erroneously decided, was the subject of immediate appeal, as affecting a substantial right. It was not, however, permissible for the defendants, on the trial, to introduce proof tending to show that decision was wrong, nor on appeal, upon any such evidence, to base the right (under § 329 of the Code) to review the merits of that order. The answer does not, in terms, assert the invalidity of that order, but simply alleges that the affidavit on which the order was granted did not state the date of Demarest's death, and of his having made the assignment of the claim prior to the filing of any notice of lien, nor defendant's ignorance of any such facts. Any misapprehension or ignorance may have furnished ground for a reconsideration of the motion; but that was never applied for, and as it affected a substantial right, and remained unreversed, it is " *res adjudicata*," upon the matter so decided, precluding subsequent inquiry or controversy on the trial as facts on which it was predicated. There is, however, no merit in the objection. Even if such a lienor had assigned his claim, he was justified, notwithstanding the assignment, in doing any such act in aid of the claim as the law accorded to it,

and if he neglected so to act, his assignee, as his attorney or agent, might execute or perform *in his name* whatever, by law, was permitted him to do, for the security or enforcement of the demand (1 Ch. Pl. 16).   What was done in the present case, after any such alleged assignment of the debt, was by way of assurance of the title to it, or in perfecting and making available the collateral securities appertaining to it, and although *pro forma* in his name (not being allowed in the name of the assignee), was strictly in accordance with the rights of the parties, and in no way compromised or prejudiced the debtor, or any one claiming under him.   Such transfer of interest cannot be construed into any release or abandonment of the rights of the creditor, nor of any right of lien incident to or attached to the debt.   The act of 1851, in terms, provided that the "contractor, laborer, or person furnishing material, should enforce or bring to a close such lien by serving, or causing to be served, personally on such owner," &c., a notice to appear and submit to an accounting and settlement of the amount claimed to be due.   The right of the assignee to file such lien in his own name was denied in *Roberts* v. *Fowler* (3 E. D. Smith, 632); but what was done in this case was by, and in the name of, the original contractor, in accordance with the provisions of the act. The Code (§ 111), requiring *suits* to be prosecuted in the name *of the real party in interest*, had no application to these proceedings previous to the service of notice to foreclose the lien, and it was only after such jurisdiction had been acquired, and they had become a suit in this court, that the orders of the court became operative upon the rights of the parties.   The objection that the right of lien incident to this debt, in the name of Demarest the contractor, was lost by reason of his assignment of the debt previous to the filing of the notice of lien, for these reasons, should not prevail.

The last point is, that. the separate judgment against the equitable owners (D. & E. Herbert & Co.), with whom the contract was made, for the amount due upon it, could not be made in this action.   A determination of the amount due from the owner to the contractor was necessary in the action, and where, as in this case, the owner appeared (by § 8 of the act of 1851,

ch. 513), and answered denying the debt, the issue was to be "tried and judgment thereon enforced in all respects, and in the same manner as upon issues joined and judgment rendered in civil actions for the recovery of money in said court." This authorized a personal judgment against the owner and contracting party, and its enforcement by execution as in other actions.

The judgment is to the effect that the lien existed only on the 16 buildings and appurtenances, and the lots upon which the same stood, to the extent of such (equitable) interest as D. & E. Herbert & Co. had therein on the 23d of January, 1863, and there is no error in this respect, as is claimed in defendant's points, intimating that it ordered the sale of either 28 or 24 lots.

The judgment should be affirmed, with costs.